Diselle J. (Larsen) BRANDRIET,
Plaintiff and Appellant,

v.

Neal J. LARSEN, Defendant
and Appellee.

No. 16122.

Supreme Court of South Dakota.

Considered on Briefs Jan. 9, 1989.

Decided June 21, 1989.

Thomas F. Burns of Gribbin, Burns & Eide, Watertown, for Neal J. Larsen.

Diselle J. (Larsen) Brandriet, pro se.

MORGAN, Justice.

Diselle Larsen Brandriet (Diselle) appeals from an order modifying a decree of divorce which specified Neal Larsen's (Neal) visitation rights, set his child support payments, granted him a federal income tax exemption for one child, and removed his life insurance obligations. We affirm in part, reverse and remand in part.

Neal and Diselle were divorced in 1983. The decree of divorce incorporated a child custody, visitation, and property settlement agreement. In accordance with this agreement, Diselle was granted custody of the parties' two children, Jerod (now age 13) and Terra (now age 9), subject to reasonable visitation. Neal was ordered to pay $100 per child per month child support and to maintain life insurance on his life and the lives of the children, naming Diselle as beneficiary, until the youngest child attained the age of majority. The agreement and resultant decree were silent as to allocation of the federal income tax dependency exemptions for the children.

In July 1985, Diselle moved to Tacoma, Washington, with her new husband. After the move, the parties were unable to agree to terms of visitation. Neal moved the court to specify his visitation rights. Diselle moved to increase child support. Hearing was held on both motions and the orders at issue resulted.

Neal is employed as a fireman earning a regular monthly gross income of $1,589.48 and receives a monthly VA pension of $69.00. His new spouse is a nurse earning $14,000 annually. Diselle is employed as a registered nurse earning a regular monthly gross income of $1,780.00. Her new spouse is a 1987 law school graduate. Diselle testified as to family living expenses, and the trial court determined that the cost of raising the children in the lifestyle to which they are accustomed was $600 per month.

The trial court entered its order modifying the decree of divorce to specify Neal's visitation rights, to increase child support payments to $330 per month (to be reduced to $200 per month when Jerod reaches the age of majority "unless either party shall show at that time that such support is inadequate or excessive"), granted a dependent federal income tax exemption to Neal for Jerod and to Diselle for Terra, and terminated Neal's obligation to maintain life insurance upon his life with Diselle as named beneficiary.

Trial courts have jurisdiction relating to custody, care, and education of minor children and may modify child support payments when there is a change in conditions or circumstances. SDCL 25-4-45; *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984). "This court does not sit as the trier of facts and will not disturb a child support award unless it appears that the trial court abused its discretion in entering its judgment." *Id.* at 7; *Donohue v. Getman*, 432 N.W.2d 281 (S.D.1988); *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982). *See also Peterson v. Peterson*, 434 N.W.2d 732 (S.D.1989).

■ As her first issue, Diselle urges that the trial court erred as a matter of law in granting Neal a federal income tax dependency exemption for Jerod in the modification order of December 5, 1986. The trial court determined that because of the increase in child support, Neal was entitled to take Jerod as a dependent on his income tax return beginning with the year 1986. Diselle relies on the provisions of 26 U.S.C. § 152(e)(1) for the proposition that, in the absence of a pre–1985 agreement or decree of divorce allocating the exemption to the noncustodial parent, only the custodial parent may claim the child as an exemption unless the custodial parent has waived that right by signing a consent form. Since Diselle has not waived her right and consented to Neal claiming the exemption, she argues that federal law does not provide or allow an involuntary waiver such as the trial court attempted to impose in this case.

Neal urges us to adopt the reasoning of *Fudenberg v. Molstad*, 390 N.W.2d 19

(Minn.App.1986), where the Minnesota Appellate Court held that, because it did not interfere with the congressional intent in the adoption of 26 U.S.C. § 152(e), a trial court has authority to award the federal income tax dependency exemption to a noncustodial parent and to enforce such award by making the custodial parent's receipt of child support contingent upon signing the waiver.

We first review the rather unusual procedural steps taken in the trial court. The matter of the amendment of the decree was before the trial court in 1986, on a motion by Neal to spell out visitation rights and a motion by Diselle to increase child support payments. As a part of the decision entered on December 5, 1986, the trial court, in addition to modifying the decree as requested by the parties, determined:

> [Neal] shall be allowed to take Jerod Larsen as a dependent on his income tax return, beginning in the year 1986, and [Diselle] shall be allowed to continue to take Terra Larsen as a dependent on her income tax return.

Subsequently, two additional adjustments were made to the modification order. The first, upon application of Neal, was an order entered on November 12, 1987, appointing the Codington County Clerk of Courts to execute the waiver form, Form 8332 of the Internal Revenue Service, apparently because Diselle had failed or refused to do so. In its memorandum opinion, absent any findings of fact or conclusions of law, the trial court further determined that "[i]f such Order of the Court were (sic) subsequently found to be inappropriate on appeal, in the absence of [Diselle] acting in compliance with the Court's previous Order, the Court would, sua sponte, consider holding [Diselle] in contempt of court upon being advised of her failure to act." The second adjustment, not pertinent to this issue, made pursuant to a stipulation between the parties, was an adjustment raising the amount of child support by some $16.00 per month, due to an oversight in omitting a small monthly pension payment from Neal's income, and an amended order to that effect was entered on December 10, 1987. No mention was made in the amended modification order of the appointment of the clerk of courts to act for Diselle.

Some background is required for any discussion of the changes brought about by the Internal Revenue Code amendment in 1984. The granting of divorces and the attendant family adjustments has traditionally been a matter for the state courts to adjudicate upon laws enacted by the state legislatures. On the other hand, of course, the enactment and collection of the federal income taxes has always been a matter of federal jurisdiction. Prior to the 1984 amendment, state courts have at times attempted to assign the dependency exemption to the parties. This assignment, however, was always subject to the party qualifying for the exemption under the requirements of the Internal Revenue Code, primarily in meeting the threshold requirements of monetary contribution to the support of the child for whom the exemption was claimed. We are unaware of any case where a parent was criticized or held in contempt in a state court where he or she had claimed the deduction in filing a return although the other parent had been allocated the dependency exemption by the state court. In other words, the Internal Revenue Service (IRS) was not bound by the state court action and apparently neither were the parties.

The amendment was proposed as part of the Deficit Reduction Act of 1984, P.L. 98–369. In the minutes of the House Committee, there was discussion of the problems with the rules which often resulted in costly disputes between the parents involving the IRS, which had little tax revenue at stake. The amendment would provide more certainty by allowing the custodial spouse the exemption unless he or she waived the right to claim the exemption, thus relieving the IRS of involvement. Pertinent to our discussion is the following:

> For [the noncustodial parent's] exemption to apply, the custodial parent will have to sign a written declaration that he or she will not claim the child as a dependent for the year, and the noncustodial parent will have to attach the written

declaration to his or her tax return. That declaration may be made for one or more specified calendar years. The parties may make a permanent declaration a copy of which the noncustodial parent attaches to each year's return, or the declaration may be made by the custodial spouse annually *in order to better insure the receipt of child support payments.* (Emphasis added.)

H.R. No. 432, 98th Cong., 2d Sess., pt. 2, reprinted in 1984 U.S.Code Cong. and Admin. News 697, 1140–41.

Since the enactment of 26 U.S.C. § 152(e), a split of authorities has developed among the state courts that have considered its application in state divorce actions. The essential query is whether or not the trial court has the authority to allocate the exemption. One line of authority, the direct action courts, finds allocation permissible upon the theory that:

> State court allocation of the exemption does not interfere with Congressional intent. It does not involve the IRS in fact finding determinations. State Court involvement has no impact on the IRS. Thus, allocation of the exemption is permissible.

*Fudenberg*, 390 N.W.2d at 21. This line of authority is also followed in North Dakota, Wisconsin, West Virginia, and Arizona. In *Fleck v. Fleck*, 427 N.W.2d 355 (N.D.1988), the North Dakota Supreme court adopted the *Fudenberg* decision in determining the right to allocate in the original divorce proceeding after 1984 and to order execution of the consent form. (The *Fleck* decision held that the trial court did not err for refusing allocation for other reasons.) In *McKenzie v. Jahnke*, 432 N.W.2d 556 (N.D. 1988), the North Dakota court reaffirmed its position in a case involving a modification of a pre–1984 decree that was silent as to allocation.

The other line of authority, the nonaction courts, adopts the view that the amendment has terminated the authority of the state courts to allocate the exemption, retaining, however, the right of the state court to take into consideration the impact of the exemption, or the lack thereof, on the ability of the noncustodial parent to pay child support. This line of authority finds its support in decisions of the Michigan appellate courts beginning with *Stickradt v. Stickradt*, 156 Mich.App. 141, 401 N.W.2d 256 (1986), wherein the court reviewed a post–1984 decree of the trial court which had allocated the exemption to the custodial parent (wife), in accordance with the provisions of the Internal Revenue Code, with the further provision that "[d]efendant (husband) does not waive, nor shall he be precluded from petitioning the Court in connection with his interests with respect to such exemption." The Michigan court struck out this language stating:

> Unlike the former version, the amended statute does not specifically contemplate or recognize state court participation in the determination of which party may claim the exemption. In post–1984 divorce cases, the custodial parent is entitled to the exemption unless he or she chooses to release the claim to the noncustodial parent.

*Stickradt*, 156 Mich.App. at 143, 401 N.W. 2d at 258. Then, in discussing the trial court's motives for incorporating the provision to give it an opportunity to take the exemption into account when ruling on future requests for an increase in child support, the court concluded that "the fact that [mother] has the benefit of the exemption is a factor that the court may consider in ruling on future requests for increases in child support[.]" *Id.*

In *Lorenz v. Lorenz*, 166 Mich.App. 58, 419 N.W.2d 770 (1988), the Michigan Appellate Court again affirmed its position as stated in *Stickradt*, in affirming a trial court denial of an application to amend a pre–1985 decree. The court, however, remanded the case to the trial court to review the alternative request for reduction in the child support payments in view of the denial. The decision directed the trial court to determine the impact of the new rule on father's ability to pay the current rate of child support, and whether such impact gave grounds for reduction under the traditional powers of the court to modify child support if the party shows sufficient change to justify a modification.

In *Varga v. Varga*, 173 Mich.App. 411, 434 N.W.2d 152 (1988), the Michigan court reaffirmed the *Stickradt* and *Lorenz* decisions and concluded that the pre–1985 divorce decree under consideration, which did not provide for allocation of the exemption to the noncustodial parent, was not a "qualified" pre–1985 instrument; therefore, that exception to the Code did not apply. The court went on, however, to say that although the trial court could not allocate the exemption, it could "consider which parent had the benefit of the exemption under the amended tax statute and its effect on the parties' ability to pay as relevant factors in deciding the amount of the modification, if any, that was justified." 434 N.W.2d at 156.

Our South Dakota decisions to date have not been on point with the issue in this case. In *State, Fall River County v. Dryden*, 409 N.W.2d 648 (S.D.1987), we affirmed the action of a trial court in amending a "pre–1985" divorce decree to give the mother, *the custodial parent,* one of two tax exemptions previously allocated father under the decree, where father had a bad history of making his support payments and mother was required to pay a considerable amount of dental and medical bills over and above insurance coverage. The discussion of the amendment and its impact was confined to a footnote.

In *Struck v. Struck*, 417 N.W.2d 382 (S.D.1987), the trial court amended a pre–1985 decree wherein mother was permitted to claim one exemption and father two. The change gave all three exemptions to mother due to the trial court's understanding that it was now IRS policy to grant the exemption to the custodial parent. We reversed for failure of the trial court to properly apply the exceptions, in this case the existence of the "pre–1985 instrument" which gave father the two exemptions.

As will be noted from the discussion of the two lines of authority, there is a wide distinction in the approach; but, in the long run, the result may be the same. In the direct action cases, the receipt of child support is contingent upon the custodial parent going along with the allocation involuntarily, while in the nonaction cases the trial court may take the custodial parent's refusal to voluntarily waive the exemption into consideration and set the child support at a level low enough to induce the custodial parent to waive. From either aspect, it is coercion, but we find the nonaction authority more persuasive.

In the first place, the amendment and the discussion at the committee hearing earlier quoted appear to contemplate a "voluntary" waiver. Now, we are not so inane as to believe that the custodial spouse is going to enter into this waiver from the goodness of his or her heart. All too often, unfortunately, when marriages break up there is acrimony and distrust. It is not reasonable to expect cooperation by the spouses in all cases. But, it is often said that money talks and when the respective spouses can demonstrate the financial difference that would result from the application of the dependency exemption to their respective tax returns[1] and the resultant effect on each one's spendable income, we believe that the trial court can listen and balance the results, even if the custodial spouse will not.

The question then becomes how the trial court will act to bring about the correct application of the exemption. Under the direct action line of cases, it could apparently do as the trial judge alternatively attempted to do in this case, direct the spouse to sign the waiver under the pains and penalties of punishment for contempt of court. We do not believe, however, that even this line of authority can be extended to authorize the clerk of courts or anyone else to sign for the custodial spouse. That tack would involve the IRS in the dispute between the taxpayers again. A review of the IRS Form 1040, of which we can take judicial notice, would indicate that such a waiver would not be acceptable to the IRS.

---

1. In many cases, because both spouses are earning income, it will be a matter of balancing the effects.

In any event, we cannot see how a waiver signed under threat of punishment or by a third person under court authority can be called "voluntary."

We therefore choose to align ourselves with the nonaction line of authority, finding it to be a more subtle persuasion. We reverse that portion of the modification order allocating to Neal the exemption for Jerod together with all of the orders or purported orders entered to effectuate such allocation. We remand the case to the trial court for the purpose of reconsidering the level of child support that Neal is to be required to pay in the absence of Diselle's apparent disinterest in voluntarily executing the waiver.[2]

Although our decision on the first issue requires remand for reconsideration of the level of child support, we find it advisable to consider Diselle's issues raised with respect to the application of SDCL 25-7-7 for the benefit of the trial court when those same arguments arise upon remand.

We should first comment that SDCL 25-7-7, PARENTS' DUTY TO SUPPORT CHILD, is a statute that has literally "growed like Topsy" and continues to do so. Of particular note is the addition, commencing in 1985, of so-called schedule and guidelines. The "schedule" consists of a chart, originally setting ranges of support levels considering two factors, the obligor's monthly net income (as determined under the guidelines) and the number of children for whom support is obligated. The guidelines prescribe a set of rules by which to determine what the obligor's net income is by first finding the gross income, incorporating funds from enumerated sources, and then subtracting allowable deductions as enumerated in the statute. This should be pretty much a mechanical process, the sources and deductions being spelled out in the language of the statute.

The second part of the guidelines raises the most controversy. That is the factors for allowing deviations from the "schedule." They do not apply to any of the computations arriving at net income. Rather, they are commentaries on the application of those figures to the "schedule." The 1985 Report Of the South Dakota Commission On Child Support[3] stated, in pertinent part: "[T]he use of uniform guidelines has certain advantages, including: ... (4) [a]llows for *deviation from the schedule* for special circumstances *upon specific findings*." 1985 Report at 14 (emphasis added).

We then examine Diselle's complaints regarding the application of SDCL 25-7-7 with regard to arriving at Neal's net income. She first complains that in arriving at gross income the trial court omitted certain seasonal income. The trial court found that such income was from a temporary job, not expected to continue past the immediate future. She further complains that the trial court failed to include the income earned by Neal's new spouse. In fact, the trial court did take that income into consideration but determined that, balanced against the income of Diselle's new spouse, there was a washout. We affirm on the first question, but find the trial court to have been in error on the second.

■ Under the statutory scheme, as it presently exists, the income of a new spouse or stepparent is referred to twice. In SDCL 25-7-8, it is provided for a stepparent's duty to support a spouse's children born prior to their marriage. Then, in

---

**2.** We believe that this can be done under the present form of SDCL 25-7-7 under factor (1) the financial condition of the parents, although we note that under the 1989 amendment, effective July 1, 1989, the statute will make specific provision for such a deviation by the addition of the following factor: "(3) Whether the federal income tax dependent deduction for such minor child is allocated to the benefit of the support obligor or the custodial parent[.]" 1989 S.D. Sess.L. ch. 220.

**3.** This commission was established by Executive Order to further South Dakota's compliance with Public Law 98-378, The Child Support Enforcement Amendment of 1984, passed by Congress effective August 16, 1984. This amendment and the regulations adopted thereunder, are the genesis of most of the action taken since 1984 in the area of child support, including the enactments incorporated in SDCL 25-7-7. Copies of the Commission's reports are available in the Office of Child Support Enforcement, Department of Social Services, Pierre, SD.

SDCL 25–7–7, it is provided *in the deviations* that the first factor for deviation is the "[f]inancial condition of the parents, including, but not limited to income of a new spouse or contribution of a third party to the income or expenses of that parent[.]" Neither of these provisions appear to distinguish a new spouse of a custodial parent from a new spouse of a noncustodial parent. We determine that, as applicable, they apply to both. *See Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988).

■ However, under the scheme in effect when the order amending the decree was entered in this case, it was only the income of the noncustodial parent that was measured by the guidelines and schedule. The 1985 Report of the South Dakota Commission on Child Support at 13 noted:

> The Commission rejected the use of guidelines using incomes of both parents because of the many problems involved when one of the parties does not work, sometimes because the new spouse works, and the fact that such guidelines do not take into account the support already being given by the custodial parent. It was the position of the Commission, based upon substantiated data, that the custodial parent already makes a significant contribution to the child by providing a lifestyle consistent with his or her resources, and the child receives custodial care and attention which has economic value. Their income, except in rare cases, should not be a determining factor in establishing the support obligation of the absent parent.

It would therefore appear that the trial court should have taken into account the income of Neal's spouse in arriving at Neal's net income. The trial court would then have been able to consider Diselle's new spouse's income as a deviation factor in determining the range of income on the schedule to use in determining Neal's level of support.[4]

■ In view of our detailed discussion of the effect of the federal and state statutory amendments, we feel it incumbent upon us to reiterate the guiding principle for the trial courts to keep in mind in the process of determining the proper level of child support; namely, the reasonable needs of the child as well as the obligor's ability to pay. The federal legislation appropriately makes no mention of this principle, but we caution trial courts to keep it in mind when considering the income balancing required under our decisions. The provisions of SDCL 25–7–7 make passing mention of the needs of the child, but we fear that such need may be drowned out in the controversy over the application of the mechanics of the statute. The needs of the child has always been a guiding star for our decisions; *Havens v. Henning,* 418 N.W.2d 311 (S.D.1988); *Gross v. Gross,* 355 N.W.2d 4 (S.D.1984); *Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979); and we do not believe that any of the legislation discussed herein has been intended to diminish those decisions.

■ Diselle also posits error on the trial court's amendment order in providing for termination of the child support upon the child attaining age eighteen. She points out that SDCL 25–7–7 does not provide for reduction when the child reaches majority and suggests that upon that event it is the burden on the noncustodial parent to make application for a decrease. Diselle overlooks SDCL 25–5–18.1:

> The parents of any child are under a legal duty to support their child in ac-

---

**4.** We hasten to point out that the 1989 legislative amendments to SDCL 25–7–7, effective July 1, 1989, have totally repudiated the "obligor only" scheme. The 1988 Report of the South Dakota Commission on Child Support made note of a perceived sense of unfairness in the current system and significant problems of when to deviate from the child support guidelines based upon the income of the custodial parent. 1988 Report at 7. The Commission recommended, and the legislature adopted, an "income shares" scheme. That method takes into account the income of both parents, adding them together, using the schedule to determine the proper amount of support for that income level, and then allocating the result between both parents in proportion to their relative incomes. 1988 Report at 8. Because of the substantial changes in SDCL 25–7–7, we suggest that the decision upon remand be drafted in accord with the statute as amended.

cordance with the provisions of § 25–7–7, until the child attains the age of eighteen, or until the child attains the age of nineteen if he is a full time student in a secondary school.

This statute must be read in harmony with SDCL 25–7–7, on which Diselle relies so strongly.

The order amending the decree provided: When Jerod Larsen reaches the age of majority, the Defendant's child support obligation shall be reduced to $200.00 per month unless either party shall show at that time that such support is inadequate or excessive.

As this court stated in *Birchfield v. Birchfield*, 417 N.W.2d 891, 895 (S.D.1988): "The clear language of the statute provides that the child support obligation ends at age eighteen (the age of majority) unless the child is enrolled in full-time secondary school, in which event the support must continue until the student turns nineteen years old." The trial court's order correctly considered termination of child support at Jerod's attaining majority and suggested that *if* there was a valid reason, Diselle could show the inadequacy of the support. We affirm on this issue.

Another issue raised by Diselle that is not directly affected by our disposition of the exemption allocation, is the question of whether the trial court erred in terminating the provision in the decree which required Neal to maintain a $30,000 insurance policy on his life, naming her as beneficiary. She urges two grounds for reversal: (1) procedural error in that Neal did not request it; and (2) error in law inasmuch as the provision was clearly part of the property division and therefor not subject to amendment without her consent.

■ First of all, with respect to the procedural question, SDCL 25–7–7 and numerous prior holdings of this court have confirmed the authority of the trial court to modify child support provisions. Diselle's motion seeking amendment of the child support provision in the decree opened for examination all aspects of child support. *Brunick v. Brunick*, 405 N.W.2d 633 (S.D.1980). The life insurance requirement

was within the purview of the court on the motion if it was not a part of the property division. *Dryden, supra; Brunick*, supra. *See also Vaccaro v. Vaccaro*, 67 Wis.2d 477, 227 N.W.2d 62, 64 (1975).

With respect to the question of whether the provision was part of the property division, the trial court specifically found that "[Neal's] expenditures for life insurance insuring his life as specified in the Agreement and as incorporated in the Divorce Decree was intended as a child support measure." The provision appears in the middle of the settlement agreement, with all other provisions for child support. Diselle's own argument supports this view when she argues that, in view of Neal's hazardous occupation, "[w]ithout the life insurance policies in effect, the appellant and the children have no assurances for the future that *child support* will continue." (Emphasis added.) We affirm the trial court on this issue.

In view of our remand for reconsideration of the child support level, we find Diselle's general argument of undue prejudice by the cumulative errors to be moot.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

We adjudicated upon allocation of dependent federal income tax exemptions in *Fall River County ex rel. Dryden v. Dryden*, 409 N.W.2d 648 (S.D.1987). Our decision was not obiter dicta. A footnote is a holding or statement of a Court. Four Justices, including the author of the majority opinion, agreed to the allocation of the exemption of the federal income tax exemption. To write that the "impact was confined to a footnote" appears unnecessarily limiting.

Attention is called to *Sarver v. Dathe*, 439 N.W.2d 548 (S.D.1989), wherein there were two solid concurrences by Chief Justice Wuest and Justice Miller. *Sarver* adjudicated upon the subject now at hand.

The majority opinion fails to make reference to it. I do not doubt that there should be a vibrant growth of the law which overrules ill-conceived, moribund, or obsolete precedents. However, for precedential vitality I respectfully suggest that cases handed down in this Court as recently as two months ago on this very subject control, and should not suffer any contemporary erosion.