Charles R. FRIEBERG, Plaintiff
and Appellee,

v.

Alicia C. FRIEBERG, Defendant
and Appellant.

No. 18079.

Supreme Court of South Dakota.

Considered on Briefs May 26, 1993.

Decided Dec. 15, 1993.

Lee M. McCahren, Vermillion, for plaintiff and appellee.

James E. McCulloch, Minick and McCulloch, Vermillion, for defendant and appellant.

PER CURIAM.

Alicia C. Frieberg (Alicia) appeals the denial of her motion for relief from a judgment and decree of divorce. We reverse and remand.

### FACTS

Alicia is a citizen of the Philippine Islands. She met Charles Frieberg (Charles), a native of South Dakota, while Charles was serving on active duty in the United States Navy. The two were married in September 1985. At the time of the marriage, Alicia had a daughter, now age ten, whom Charles later adopted. Three other children were born during the course of the marriage: a son, now age five; a daughter, now age three; and, another son, now age two.

In March 1991, the parties were living in Denver, Colorado, where Charles was still serving in the military. Alicia had been hospitalized for some severe emotional problems. Charles brought the children back to South Dakota to be cared for by his parents while he could restore some order in his life. On March 27, 1991, Charles personally served Alicia with a summons and complaint for divorce. The summons provided in pertinent part:

YOU ARE HEREBY SUMMONED and required to answer the Complaint of the above-named Plaintiff, a copy of which is hereto annexed and herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at his office, at P. O. Box 297, Vermillion, South Dakota, 57069, within thirty (30) days after the service of this Summons upon you, exclusive of the day of such service, *and if you fail to answer within said time, the Plaintiff in this action will take judgment against you by default as requested in Plaintiff's Complaint, after sixty (60) days have elapsed from the completed service of said Summons and Complaint.* (emphasis added).

Although Alicia is able to read and speak English, Charles read the summons and complaint to her and explained the documents. Alicia acknowledged service with her signature on an admission of service.

Legal services were accessible to Alicia on the air base where she lived. A day or so after receiving the summons and complaint, Alicia consulted the available military legal services and was referred to Denver legal aid. On May 20, 1991, Alicia contacted the Legal Aid Society of Metropolitan Denver requesting assistance in obtaining a divorce and custody of her children. Because a South Dakota divorce was involved, an exchange of correspondence and telephone calls apparently ensued between the Denver legal aid office and East River Legal Services in Sioux Falls, South Dakota. In the interim, a default divorce judgment was entered against Alicia on May 28, 1991. The judgment awarded Charles custody of the parties' four children subject to Alicia's visitation rights.

On June 4, 1991, several days after the default divorce judgment had already been entered, East River Legal Services notified Denver legal aid that services would be provided to Alicia. On June 11, 1991, Alicia was personally served with a copy of the judgment and decree of divorce. On November 4, 1991, Alicia's South Dakota counsel served a motion for relief from the default divorce judgment. A hearing on the motion was conducted on November 19, 1991. On July 28, 1992, the circuit court entered its findings of fact, conclusions of law and order denying the motion for relief from judgment. Alicia appeals.

## ISSUE

### DID THE CIRCUIT COURT ABUSE ITS DISCRETION IN DENYING ALICIA'S MOTION FOR RELIEF FROM THE DEFAULT DIVORCE JUDGMENT?

Alicia contends her lack of fluency with the English language, her inexperience with court proceedings and the legal system, the fact she believed some notice would be given to her before trial, the series of referrals from legal aid services and her hospitalization for emotional problems all constitute excusable neglect warranting relief from the default judgment. SDCL 15–6–60(b)(1). We agree.

"The decision to grant or deny relief from a default judgment rests with the sound discretion of the trial court and we will not disturb the trial court's decision absent an abuse of that discretion." *First Federal Sav. & Loan Ass'n v. Strub*, 427 N.W.2d 836, 838 (S.D.1988).

The trial court's discretion should be exercised liberally in accord with legal and equitable principles in order to promote the ends of justice.

SDCL 15–6–60(b) authorizes relief from judgment based on mistake, inadvertence, excusable neglect, surprise and fraud; ... *'This Court is more inclined to reverse for failure to set aside a judgment taken by default* as in the absence of a litigant and his counsel than where such judgment has been set aside and trial on the merits granted.'

A party seeking to have a judgment vacated under SDCL 15–6–60(b)(1) must meet two requirements. The applicant must show (1) the excusable neglect; and (2) a probable meritorious defense. As a procedural matter, the party seeking relief under 15–6–60(b) must meet the timeliness element of the statute. SDCL 15–6–60(b), in relevant part, states: '[t]he motion shall be made within a reasonable time, and for

reasons [of subsections] (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.' *Clarke v. Clarke*, 423 N.W.2d 818, 820–21 (S.D.1988) (citations omitted) (emphasis added).

### Timeliness of Motion

■ In this instance, the default judgment was entered on May 28, 1991. Alicia filed her motion for relief from judgment on November 5, 1991. This is a delay of 160 days or approximately five months. In discussing the timeliness of the motion for relief from the default judgment in *Clarke*, 423 N.W.2d at 821, this Court observed:

> Lynda's motion was filed within five weeks after judgment, well within the one year limitation of 15–6–60(b). The motion was also filed within a reasonable time. [*Rogers v. Rogers*, 351 N.W.2d 129 (S.D.1984)] allowed a motion to vacate judgment when it was filed within six months of the original judgment. The Rogers' court, while not expressly holding that six months was reasonable, implicitly recognized its reasonableness when it allowed the judgment to be vacated under 15–6–60(b)(1). This court has also held that just under one month was a reasonable time to make a motion under SDCL 15–6–60(b)(6). Subsection (6) does not have the one year limitation that subsections (1), and (2), and (3) have. *Gross v. Kouf*, 349 N.W.2d 652 (S.D.1984). Therefore, a motion made within one year under SDCL 15–6–60(b)(1) which is based upon the compelling factors that exist in this case meets the timeliness element of the statute.

The time frames discussed above can be contrasted with the two and one-half year delay in the filing of the motion for relief from judgment that was found untimely in *Anderson v. Somers*, 455 N.W.2d 219 (S.D. 1990).

In view of the time frames discussed above, we hold that, despite Alicia's five month delay in filing her motion for relief from judgment, her motion was timely. As in *Clarke, supra,* we reach this conclusion because of the "compelling factors" in this case that are discussed below in terms of excusable neglect warranting relief from the judgment.

### Existence of Excusable Neglect

■ In *Clarke, supra,* this Court held:

> A party moving for relief from judgment must show excusable neglect. Excusable neglect must be neglect of a nature that would cause a reasonable, prudent person to act similarly under similar circumstances. The term 'excusable neglect' has no fixed meaning and *is to be interpreted liberally* to insure that cases are heard and tried on the merits. Excusable neglect is illusive and difficult to define: 'I could never succeed [in defining it intelligibly]. But I know it when I see it.' *Jacobellis v. State of Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 804 (1964) ([Stewart], J. concurring, describing obscenity).

*Clarke*, 423 N.W.2d at 821 (citations omitted) (emphasis added). In *Clarke, supra,* this Court found excusable neglect in the defaulting defendant's emotional state of mind, her drinking problems and the disarray of her marriage. Similar factors are present in the instant case. Alicia was served a summons and complaint for divorce the day she left a hospital she had entered for severe emotional problems. Compounding her emotional problems, was Alicia's strained comprehension of the English language and her lack of familiarity with the American legal system. Although the circuit court found that Alicia can read and speak English and that her linguistic abilities were sufficient to present her claim in court, a review of Alicia's hearing testimony makes it readily apparent that she has limited communicative and comprehensive skills. Questions had to be repeated and Alicia's answers were frequently rambling, vague or indefinite. This Court has previously found a default defendant's foreign birth and lack of experience with court proceedings sufficient to establish excusable neglect warranting relief from a default judgment. *See, Johnson v. Johnson*, 50 S.D. 341, 210 N.W. 155 (1926). *See also, Rosebud Lumber Co. v. Serr*, 22 S.D. 389, 117 N.W. 1042 (1908).

Despite her language difficulties and emotional problems, Alicia *did* seek help from a legal aid office almost immediately after service of the summons and complaint. However, instead of affording Alicia the assistance she needed in defense of the divorce litigation, Alicia was caught in a bureaucratic quagmire as three separate legal aid offices attempted to determine which one of them should handle Alicia's case. Military legal aid in Denver referred Alicia to a Denver legal aid office. Alicia contacted Denver legal aid the day after service of the summons and complaint. Yet, nearly two months apparently passed before that office was able to conduct an interview on May 20, 1991, only eight days before the divorce hearing. Another bureaucratic shuffle ensued between Denver legal aid and East River Legal Services in Sioux Falls. Phone calls and correspondence were apparently exchanged and it was not until June 4, 1991, that East River Legal Services issued any formal notice that it intended to provide services to Alicia. This was already seven days *after* entry of the default divorce judgment against Alicia. Even the notice that was issued merely advised that Alicia would be sent a list of South Dakota attorneys and that Alicia would then have to choose an attorney and contact that person for assistance. Thus, yet another referral was involved before Alicia could finally obtain the assistance of South Dakota legal counsel. Presumably after that point, Alicia needed additional time to confer with South Dakota counsel, allow counsel time to review and evaluate the case, and permit counsel time to determine the appropriate course of action and file appropriate motions. *See, Clarke, supra.*

Given this bureaucratic shuffle, we find that the legal aid offices involved were more at fault in Alicia's default than Alicia. "It is the settled rule, relief under SDCL 15–6–60(b) is available in attorney negligence situations only if the client can affirmatively show either (1) that the attorney's negligence was excusable or (2) that the client herself was not negligent." *Gold Pan Partners, Inc. v. Madsen,* 469 N.W.2d 387, 392 (S.D.1991). Although it is true that clients have responsibility for inquiring into their affairs and must be diligent in contacting counsel to inquire

about the progress of legal proceedings (*First Federal Sav. & Loan, supra*), given Alicia's foreign birth and lack of familiarity with the American legal system, it was not unreasonable for her to have stood by waiting for assistance she doubtlessly believed had been promised and would be forthcoming.

The circuit court's finding of fact # 13 did determine that Alicia made a "decision [to] not take action" despite, "the legal advice provided her by three separate legal representatives." This finding was appropriately objected to as clearly erroneous. We have searched the record in vain for information concerning what "legal advice" was given to Alicia by the three separate legal aid agencies she contacted. Alicia's rambling and vague hearing testimony renders it impossible to know exactly what she was told or what she understood concerning the necessity of filing an answer and making a timely response to Charles' divorce complaint.

Although Alicia contacted military legal aid a day or so after receiving the summons and complaint, when asked if she knew she had 60 days to do something, Alicia testified, "Yes sir. Well, I didn't know exactly. But when I went to the legal service on base, they told me. I didn't know. But then after they told me, I find that out." When asked if military legal aid offered her legal representation, Alicia responded, "Just he told me to call the legal aid [at Denver]." When asked if she did that, Alicia stated, "Yes, I did that right away. They keep me on hold and they asked me how much income I make and everything. They told me they are going to send me a paper."

Although Alicia conceded she was told there were 60 days from her signature on the admission of service until the divorce could be final, she also testified that she thought she was supposed to get further notice before anything would happen. Additionally, Alicia testified that Denver legal aid:

> said that they were going to put the—they're going to help me. Then they let me waited and waited. I kept calling them. Then they said, oh, one of this person, you know, say that where did your

husband file this? I said, 'In South Dakota.' He should have—well, he should have filed the divorce in here.

In a similar vein, Alicia testified on cross-examination that Denver legal aid:

They give me hope. They said they're going to send me the paper. Then I kept waiting. Then where's the papers? Then I called him. I bugged him again. I called him again. I said, hey, I really need a lawyer before—I don't understand what I'm losing in here.

Based upon this testimony, it is clear that Alicia did not sit idly by awaiting entry of the default divorce decree but, rather, took the only actions she knew how to take. The day after service of the divorce papers, she made contact with legal aid in the undoubted expectation that professionals would take the necessary action to assist her. While the clock ticked, the "professionals" filed no answer, took no steps we can see to assure the filing of a timely answer and, insofar as the record reflects, did nothing but attempt to hand off Alicia's case. Accordingly, we hold finding of fact # 13 concerning Alicia's "decision to not take action" to be clearly erroneous. *See, Johnson v. Johnson,* 451 N.W.2d 293 (S.D.1990) (findings of fact not disturbed on appeal unless clearly erroneous). *See also, Selle v. Pierce,* 494 N.W.2d 634 (S.D. 1993) (finding clearly erroneous when after reviewing all evidence we are left with definite and firm conviction that mistake was made). A decision involves making an informed choice from among the available alternatives. Here, we find nothing to establish that the available alternatives in response to the divorce action were ever comprehended by Alicia or that, from among those alternatives, she made a conscientious choice not to respond.

Based upon the foregoing analysis, a liberal review of these exceptional circumstances clearly discloses the existence of excusable neglect warranting Alicia's relief from the default judgment. Certainly the facts in this case are just as compelling as those involved in *Clarke, supra.*

*Existence of A Probable Meritorious Defense*

■ Alicia must also show a probable meritorious defense to the action to successfully obtain relief from the default judgment. *Id.* "The party seeking relief must present facts either by answer or affidavit from which it could be inferred that upon a trial he would be entitled to a judgment more favorable to himself than the judgment from which he is seeking relief." *Clarke,* 423 N.W.2d at 821. An applicant for relief from a judgment satisfies the meritorious defense requirement, however, if he makes only a prima facie showing. *National Surety Corp. v. Shoemaker,* 86 S.D. 302, 310, 195 N.W.2d 134, 138–39 (1972). "The rule does not intend that there should be two trials on the merits." *Id.*

■ In the default divorce judgment, Alicia lost custody of all four of her children. In seeking relief from the default judgment, she premised her entire meritorious defense argument on a claim to custody of *only* the youngest child.[1] Alicia contended that Charles was not the natural father of the youngest child and, therefore, she had a superior right to custody of the child that would afford her a more favorable custody determination than the one in the judgment from which she was seeking relief. The circuit court disposed of Alicia's contentions by finding that:

Alicia presented no facts to challenge the presumption established by law as to parentage of her child ... The presumption stands and no meritorious defense was presented by Alicia. She presented no facts from which it could be inferred that upon trial she would be entitled to a judgment more favorable than the judgment from which she sought relief.

Notwithstanding this finding, the record reflects that, during the hearing on Alicia's motion for relief from judgment, she testified that Charles was not the youngest child's natural father and that Charles had had a vasectomy approximately one year before the child was born. Father's own testimony during the hearing established that, prior to the

1. Thus, father's custody of the other children is *not* contested or at issue in this appeal.

child's conception, he had had an effective vasectomy. In *In re Kessler's Estate,* 76 S.D. 158, 74 N.W.2d 599 (1956), this court found proof that the mother's husband had undergone a successful vasectomy and the mother's testimony that another man was the father of the child was sufficient to establish "beyond a reasonable doubt" that the child was illegitimate. *Kessler's Estate,* 76 S.D. at 165, 74 N.W.2d at 603. Based upon the facts presented by Alicia and the precedent of *Kessler's Estate, supra,* we hold that the circuit court's finding concerning Alicia's meritorious defense is clearly erroneous. *See, Johnson, supra. See also, Selle, supra.*

Moreover, in determining whether Charles' nonpaternity of the youngest child could afford Alicia a more favorable custody determination regarding that child, we note that, at the time this action was commenced, SDCL 25–5–10 provided:

> The mother of an illegitimate unmarried minor is entitled to its custody, services, and earnings. In an action for the determination of paternity, the court may award custody of the child to either parent, considering the best interests of the child as to its temporal, mental and moral welfare.

SDCL 25–5–10 (1984 Rev.). During the 1991 legislative session SDCL 25–5–10 was amended to read as follows:

> The mother of an unmarried minor born out of wedlock is entitled to its custody, services, and earnings subject to the court's right to award custody of the child to either parent, considering the best interests of the child as to its temporal, mental and moral welfare.

2. We note that, during the 1993 legislative session, SDCL 30–27–23 was repealed effective July 1, 1993. *See,* 1993 S.D.Sess.L. ch. 213, § 170.

3. This holding is not to condone, approve or make adultery an affirmative defense in any type of action. Adultery has not been raised, briefed or argued as an issue in this case at this time.

4. In reaching this conclusion we again emphasize that Alicia only disputes custody of the youngest child. We also emphasize that by concluding Alicia has a probable meritorious defense in that dispute we are dictating no final decision concerning the award of custody of the youngest

SDCL 25–5–10. The amendment of SDCL 25–5–10 took effect on July 1, 1991 (SDCL 2–14–16), during the pendency of this action. Regardless of the amendment, we find that the following statement of this Court in *Pribbenow v. Van Sambeek,* 418 N.W.2d 626, 628 (S.D.1988) remains applicable:

> SDCL 25–5–10 follows the general rule that mother is initially entitled to the illegitimate child's custody. However, it also clearly provides that ... the court may award custody of the child *to either parent,* considering the best interests of the child. Additionally, commensurate with SDCL 30–27–23, when child custody is involved, preference is generally given to a parent over a nonparent. (emphasis original).

As it did in *Pribbenow,* SDCL 30–27–23 provided during the duration of these proceedings that, "[o]f two persons equally entitled to the custody in other respects, preference is to be given as follows: (1) to a parent[.]"[2]

The custody preferences of SDCL 25–5–10, *Pribbenow, supra,* and SDCL 30–27–23 would appear to provide Alicia a prima facie defense to Charles' adverse claim to custody of the youngest child if Alicia is able to muster sufficient proof that the child is an illegitimate child and not Charles' natural child.[3] Therefore, we conclude that mother has established a probable meritorious defense in this action.[4]

Based upon the above analysis, we hold that both prongs necessary for relieving Alicia from the default divorce judgment have been met, i.e., excusable neglect and a probable meritorious defense. Accordingly, the circuit court's order denying mother relief from the default judgment should be re-

child. Such an attempt by this court would be highly premature. Alicia satisfies the meritorious defense requirement if she makes only a prima facie showing (*National Surety Corp., supra*) and we hold *only* that she has met that threshold requirement. Resolution of substantive custody issues such as applicability of the presumption of parentage, paternity, mother's fitness as a parent, the best interests of the child and the existence of compelling reasons that would warrant separation of that child from its siblings in father's custody (*See, Mayer v. Mayer,* 397 N.W.2d 638 (S.D.1986)) remain for the trial court to resolve on remand.

versed and the matter remanded for further proceedings. *Clarke, supra.*

Reversed and remanded.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.