Shane M. **ALEXANDER**, Plaintiff
and Appellant,

v.

Callie A. **HAMILTON**, Defendant
and Appellee.

No. 18407.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1994.

Decided Dec. 7, 1994.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for plaintiff and appellant.

Catherine E. Mattson, Rapid City, for defendant and appellee.

SRSTKA, Circuit Judge.

Shane M. Alexander (Father) appeals from provisions of a judgment in a paternity action respecting child support, awarding a federal income tax exemption, dividing personal property, awarding certain attorney fees, and assigning a specific day care provider.

## FACTS

Father and Callie Hamilton (Mother) cohabited, without being married, from June 1989, to November 1992. Their relationship produced Elissa Marie Hamilton–Alexander (Elissa) on February 8, 1991.

Father earned $7.97 per hour as a laborer. His work schedule varied each week on a set schedule. He worked thirty-six hours one week and forty-eight hours the next week. He received sixteen hours of overtime every month with time-and-a-half compensation in addition to $1.00 per hour incentive pay. Mother earned $4.50 per hour as a receptionist and worked thirty to forty hours per week.

As the relationship soured, the parties lived apart briefly and finally separated on November 12, 1992. One day later, Father stated that Mother threatened to kill both Father and Elissa to prevent Father from having Elissa's custody. Father reported the threats to the authorities, completed the necessary forms and procedures, and had Mother placed temporarily in the psychiatric ward at the Rapid City Regional Hospital from November 13 to November 14 by way of a petition for emergency commitment. Thereafter a complicated skein of procedure wound around the question of Elissa's custodians.

## PROCEDURAL HISTORY

On November 16, 1992, Mother commenced a proceeding for a protection order under SDCL 25–10. Judge Roland Grosshans granted a temporary protection order to Mother and awarded her custody of Elissa.

At that hearing, Mother's counsel told Father's counsel that Mother left personal effects at Father's house. Father's counsel said she would make arrangements for the return of such property after Mother provided her with a list.

On January 4, 1993, Mother filed two motions under the caption of the protection order case asking for custody of Elissa.

In another procedural permutation, on November 20, 1992, Judge John Konenkamp heard an abuse and neglect proceeding under a juvenile court file number involving the Department of Social Services of the State of South Dakota (Department), the parties and Elissa. Judge Konenkamp concluded that the issue was custody rather than abuse or neglect and awarded joint custody of Elissa to the parties with Mother having her for four days and Father for three days a week. Judge Konenkamp overrode the protection order in respect to visitation, ordered the custody arrangement for thirty days and advised the parties to seek a civil remedy. Following the Department's recommendations, Judge Konenkamp ordered the parties to use Candace Johnson as the day care provider. He asked both parties if they objected to Candace Johnson; neither party objected.

On December 11, 1992, at the final hearing on the protection order proceeding, Judge Grosshans took notice of the dependency and neglect file, Judge Konenkamp's order, and the Department's reports. Judge Grosshans agreed with the Department's reports and Judge Konenkamp's order, granted a mutual restraining order and continued Judge Konenkamp's order.

On January 11, 1993, Father sued Mother under SDCL 25–8–7 requesting the court: (1) to declare him to be the father of Elissa; (2) to grant him custody of Elissa but to allow Mother reasonable visitation rights; (3) to order Mother to pay support pursuant to the statutory guidelines; (4) to recover his attorney's fees and costs of the action; and (5) to receive "such other and further relief as the Court deems just and equitable."

Mother answered and counterclaimed requesting, *inter alia*, the court to grant custody with support and "such other and further relief as the Court deems just and equitable on the premises." No reply to the counterclaim appears in the record.

On January 27, 1993, Judge Grosshans ordered, during the pendency of the case, that the parties have joint legal custody of Elissa, with primary physical custody to Father pursuant to the parties' agreement. The parties established a visitation schedule for Mother. Visitation was to occur every other weekend from 5:00 p.m. on Friday until 7:00 p.m. on

Sunday. Mother also was to have Elissa overnight one night each week and Mother was to be allowed to visit Elissa between 5:00 p.m. and 7:00 p.m. one night during the week. In addition, the parties agreed to certain holidays visitation on an alternating schedule. Judge Grosshans also ordered a custody evaluation; however, that order lapsed because the parties agreed by written stipulation to Elissa's custody and parental visitation.

The parties' stipulation closely followed their previous agreement with an addition of six weeks summer visitation by Mother, with the terms to be settled at trial. The stipulation also included a provision assigning parental responsibility to take the child to and from day care on certain days.

On January 27, 1993, Judge Grosshans signed an order closing the protection order file and merging its records into this case.

The parties tried the remaining issues of support and the summer visitation before Judge Grosshans on May 12, 1993. Some disputes over ownership of certain items of personalty remained between the parties. Mother requested that the court hear and resolve those issues over objection of Father.

The trial judge ruled on several issues, including the personal property issues, and made written findings of fact and conclusions of law. On May 24, 1993, the trial judge signed a "Judgment of Paternity, Custody, Visitation, Child Support, Medical Bills, Insurance, Attorney Fees, IRS Deduction, Day Care Bills and Provider."

Father has appealed, claims five errors, and seeks attorney fees on appeal.

## DECISION

ISSUE I: WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY EXCUSING A NON–CUSTODIAL MOTHER FROM PAYING CHILD SUPPORT WHEN SHE IS EMPLOYED AND FATHER HAS THE PRIMARY PHYSICAL CUSTODY.

A trial judge must generally base an award of child support upon the schedules in SDCL 25–7–6.2. *Bloom v. Bloom*, 498 N.W.2d 213, 217 (S.D.1993). Deviations must be based on the factors enumerated in SDCL 25–7–6.10. *Id.*

In the present matter, the trial judge specifically found that the parties would have almost equal time with Elissa and, therefore, did not award child support pursuant to SDCL 25–7–6.10(5). Under that statute, the trial judge may allow a deviation from the schedule based upon custody and visitation provisions when "children share substantial amounts of time with each parent...." SDCL 25–7–6.10(5).

Father states the court's finding relative equality of time is incorrect. Father alleges that he will have physical custody of Elissa 67% of the time and Mother but 33% of the time. On the other hand, Mother states that she will, in a two week period, have physical custody of Elissa 3–½ days one week and 2–½ days the next week. Mother also notes the vagaries of time when the child must be taken to and from the day care provider.

To prevail Father must show that the trial judge abused his discretion in deviating from the child support schedules. *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D.1990). This court will not "determine whether (we) would have made an original like ruling, but whether we think a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." *Id.* (citing *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988)).

Both parties live in the same area and have worked out a rather complex visitation schedule. Since the statute does not require an equal split, but only "substantial" periods of time with each parent, to deviate from the guidelines, we conclude that the trial judge did not abuse his discretion.

In addition the trial judge stated in Conclusion of Law VI "That child support will be paid by the parties in the form of day care services." SDCL 25–7–6.10(6) permits a trial judge to deviate from the schedule for "(c)hild care expenses for the child for whom the support is being set...." Regardless of its name, Mother is ordered to make cash payments based upon her income in the amount of 30% of the child care payments.

Thus, Mother is contributing to the support of Elissa and the deviation was not in error.

Finding no error or abuse of discretion, we affirm on this issue.

ISSUE II: WHETHER THE TRIAL COURT HAD THE AUTHORITY, ABSENT CONSENT, TO ALTERNATE THE IRS DEPENDENCY EXEMPTION FOR THE MINOR CHILD BETWEEN THE PARENTS.

■ Father relies on 26 U.S.C. 152(e) and South Dakota cases asserting that the trial judge should not have alternated the income tax exemptions between the parties. The federal statute in summary declares that, absent an agreement, the tax exemption in a divorce case should go to the custodial parent. *See* 26 U.S.C. § 152(e). We have followed this law in recent cases on the subject. *See Voelker v. Voelker,* 520 N.W.2d 903 (S.D. 1994); *Earley v. Earley,* 484 N.W.2d 125 (S.D.1992) cert. denied — U.S. —, 113 S.Ct. 272, 121 L.Ed.2d 200 (1992); *Brandriet v. Larsen,* 442 N.W.2d 455 (S.D.1989); *Sarver v. Dathe,* 439 N.W.2d 548 (S.D.1989); *State, Fall River County v. Dryden,* 409 N.W.2d 648 (S.D.1987).

Father's argument, however, overlooks an important point; the parents were never married. 26 U.S.C. § 152(e) only applies to *divorces* and *legal separations,* not to a case such as we see here. The Court of Appeals of Oregon addressed a similar contention in *Gleason v. Michlitsch,* 728 P.2d 965 (Or.App. 1986), and rejected it basing its decision in part upon a memorandum from the United States Tax Court. In discussing that issue the court stated:

> [Appellant] argues that, because IRC § 152(e)(1)(A)(iii) refers to parents who "live apart at all times during the last six months of the applicable calendar year," it applies to parents who have never married and that, as the custodial parent, [appellant] is entitled to the exemption. IRC § 152(e), however, applies only to parents who are or who have been married. *See Dillard v. Commissioner,* 47 TC Memo 919 n. 3 (1984) ("Since petitioner [and the mother of his child] were never married, the provisions of section 152(e), relating to

a child of divorced or separated parents, do not apply.")

*Gleason,* 728 P.2d at 967. The Oregon Court continues by stating that the trial court should not *designate* a parent to receive the exemption since such a determination "depends entirely on the application of federal income tax law to the actual facts." *Id.*

The trial judge, however, after considering the parties' financial standing and the tax impact upon them, could determine which party may *claim* the child as a dependent with the understanding that the final determination is a question of federal tax law. *See Ranes and Ranes,* 118 Or.App. 264, 846 P.2d 1195, 1197 (1993). In a cautionary note, the *Ranes* court noted that (1) Oregon's child support guidelines are based upon a presumption that the custodial parent will have the income tax exemption and (2) the court must consider the effect of the award of the dependency exemption to a parent. *Id.* Whether such would apply in this case is immaterial since Judge Grosshans properly deviated from South Dakota's child support guidelines.

We find no error or abuse of discretion in Judge Grosshan's judgment on this point; however, following the Oregon Court's direction in *Gleason v. Michlitsch, supra,* we modify the judgment to allow the parents to claim the exemption in alternate years rather than be awarded the exemption in alternate years. As noted above, the final determination of which parent finally wins the exemption is a matter of federal law. We affirm as modified.

ISSUE III: WHETHER THE TRIAL COURT HAS JURISDICTION IN A PATERNITY ACTION TO ORDER A DIVISION OF PROPERTY.

In her complaint, Mother requested the court order Father return certain personal items in possession of Father. The record shows that at the November 16, 1992 proceeding, Mother's counsel told Father's counsel that Mother had left personal effects at Father's house. In response, Father's counsel said if a list of such property was provided, arrangements would be made for the return of such property. The record shows Mother furnished the list before trial, but

Father objected to returning the property. Both parties in their prayers for relief invoked the legal and equitable powers of the court for relief. At trial, the judge awarded Mother certain personal items in possession of Father.

██ Since the parties invoked the general equitable powers of the court, the trial judge could have made a property division. A circuit court has original jurisdiction in all cases in equity. S.D. Const. art. V, § 5; *Hinkelman v. Berringer*, 77 S.D. 562, 96 N.W.2d 174, 176 (1959). Accordingly, a trial court has broad jurisdiction to redress a wrong in a civil action and has jurisdiction to grant equitable remedies when properly invoked and pursuant to the principles of equity. *See Beadle County v. Hinckley*, 69 S.D. 381, 10 N.W.2d 757, 758 (1943). This equitable jurisdiction encompasses property rights. *State v. Cozad*, 70 S.D. 193, 16 N.W.2d 484, 487 (1944). A trial judge should use this power sparingly, however, since a paternity action is not a substitute for nor should it be considered an action for divorce or separate maintenance. In this case because Father agreed at the November 16, 1992 hearing to return the property if listed by Mother, the court at least had powers in equity to compel Father to perform under the statement made by Father at that hearing.

██ Our standard of review of a trial court's property division is that of an "abuse of discretion." *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994); *Radigan v. Radigan*, 465 N.W.2d 483, 487 (S.D.1991); *Henrichs v. Henrichs*, 426 N.W.2d 569, 572 (S.D. 1988). We have stated several times:

> It is well settled that the trial court has broad discretion with respect to property division and, absent an abuse of discretion, its judgement will not be set aside.

*Caughron v. Caughron*, 418 N.W.2d 791, 792 (S.D.1988); *Tate v. Tate*, 394 N.W.2d 309, 311 (S.D.1986). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D.1990) (citing *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D.1988)); *Bennett v. Bennett*, 516 N.W.2d 672, 674 (S.D.1994) (citing *Chicoine*

*v. Chicoine*, 479 N.W.2d 891, 895 (S.D.1992)). Father had property in his possession which belonged to Mother. We cannot say the trial judge was not justified in acting to determine the rights of the parties with respect to the property in question. We find no error or abuse of discretion in the trial court's award of personal property to Mother in this limited situation and on these facts. We affirm on this issue.

ISSUE IV: WHETHER IN A PATERNITY ACTION, THE TRIAL COURT HAD JURISDICTION TO REQUIRE THAT FATHER PAY ATTORNEY'S FEES ASSOCIATED WITH MOTHER'S INVOLUNTARY MENTAL COMMITMENT.

Judge Grosshans ordered Father to pay 70% of Mother's attorney's fees that she owed because of the mental commitment hearing. Father claims error on appeal that the trial judge did not have jurisdiction under SDCL 15–17–38 to award such fees. The mental commitment case was completed and not before Judge Grosshans when he heard this case at least as far as the record shows. A debt existed since fees were obligated.

██ Father is correct when he declares that SDCL 15–17–38 does not authorize payment of fees for proceedings under SDCL 27A–10, the mental commitment statutes. This action, however, ostensibly is to determine paternity for Elissa.

SDCL 15–17–38 reads:

> The compensation of attorneys and counselors at law for services rendered in civil and criminal actions and special proceedings is left to the agreement, express or implied, of the parties. However, attorneys' fees may be taxed as disbursements if allowed by specific statute. The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, *determination of paternity*, separate maintenance, support or alimony. The court may award the fees before or after judgment or order. The court may award attorneys' fees from trusts administered through the court as well as in probate and guardianship proceedings. Attorneys' fees

may be taxed as disbursements on mortgage foreclosures either by action or by advertisement.

(emphasis added).

The trial judge, in our opinion, could use two theories to award the attorney's fees between the parties. As shown by the procedural history and facts of the case, the commitment proceeding was closely tied into the other remedies and procedures used by the parties to give them advantage in the battle for Elissa. Whether the allegations regarding Mother were true, we cannot tell from the record. Did Father indeed use the mental commitment procedure to gain advantage for his position? We do not know from the record. What we do know is that Judge Konenkamp and Judge Grosshans presided over the large part of these proceedings. Judge Grosshans incorporated Judge Konenkamp's proceedings into this record. We must assume that Judge Grosshans reviewed the mental commitment proceedings and gave it the weight to which it was entitled. (Three days after Mother was committed to the hospital, Judge Grosshans granted mother a protection order with custody of Elissa). Judge Grosshans could conclude that the mental commitment proceeding was a part of this custody suit and award the fees under SDCL 15–17–38.

■ As an alternative, since both parties invoked the equitable powers of the court, the judge could also view the attorney's fees as a debt and divide them equitably using the same theories used to divide the property. *See, Beadle County*, 10 N.W.2d at 758.

Finding no error or abuse of discretion, we affirm on this point.

ISSUE V: WHETHER, UNDER THE FACTS OF THE CASE, THE TRIAL COURT COULD ORDER THE PARTIES TO USE A SPECIFIC CHILD CARE PROVIDER.

■ The trial judge ordered the parties to use Candace Johnson as the day care provider for Elissa. Father urges a narrow reading of the statutes, alleging that the

paternity action statute, SDCL 25–8–7, does not permit a judge to specify a day care provider. Father places too much reliance on one statute. SDCL 25–8–7 provides a remedy to establish paternity and to determine support obligations. In the area of custody, however, it is not exclusive.

■ The law grants Mother statutory custody over Elissa because Elissa was born out of wedlock. *See* SDCL 25–5–10. The trial judge, however, may award custody to either parent "considering the best interests of the child as to its temporal, mental and moral welfare." *Id.; Frieberg v. Frieberg,* 509 N.W.2d 415, 420 (S.D.1993). The joint custody statute also permits a judge to make decisions regarding the child's care. *See* SDCL 25–5–7.1. The grant of authority in this statute is broad, allowing the trial court to act "(i)n any custody dispute between parents ...." *Id.* Additionally, the trial court may assign specific areas of responsibility to parents and assign "any other responsibilities which the court finds unique to a particular family or in the best interest of the child." *Id.* The trial judge must read these statutes *in pari materia. Sander v. Geib, Elston, Frost Prof. Ass'n.,* 506 N.W.2d 107, 122 (1993); *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992). Thus, SDCL 25–8–7 is not exclusive in the area of custody and best interest of the child. The trial judge ordered the parties to have joint custody of Elissa. Under his authority, the trial judge has the power to determine other responsibilities such as day care. Therefore, Judge Grosshans' order was not in error.

Moreover, we must not ignore the protection order proceeding in which Judge Konenkamp ordered the parties to use Johnson as the day care provider. Judge Grosshans ordered a protection order, continued Judge Konenkamp's order, and then merged the protection order file into the present case. Although the relief is temporary, not more than one year at the time of the proceeding,[1] SDCL 25–10–5 grants plenary authority to the trial judge to make orders for the protection of Elissa. SDCL 25–10–5(3) gives the

---

1. After July 1, 1994, SDCL 25–10–5 has been modified to provide the relief duration not to

exceed three years.

trial judge authority to award custody; SDCL 25–10–5(6) augments this authority, granting the trial judge the authority to "(o)rder other relief as the court deems necessary for the protection of a family or household member." Although not a substitute for a proper action for permanent custody, and admittedly temporary, the protection order statute gave the trial judge ample authority to protect Elissa, a family member, which included the power to determine where the child was to receive care. Furthermore, Judge Grosshans ordered the protection order closed, not dismissed, and merged it into this action.

Father is not without remedy. Since custody and day care are stipulated by the parties, Father may without showing a substantial and material change in circumstances, prove in the future, by a preponderance of the evidence, that Elissa's best interests and welfare would require a change in the day care provider. *See Henle v. Larson,* 466 N.W.2d 846 (S.D.1991). Even if a trial court would conclude that Father must show a substantial and material change in circumstances to change the day care provider, such a requirement is not germane when we review the circumstances in this case.

Although a trial judge should avoid becoming enmeshed in too many details of a custody arrangement, clearly the trial judge had jurisdiction to specify a day care provider particularly when faced with the facts in this case. The Department recommended Candace Johnson, Judge Konenkamp ordered Candace Johnson in the dependency and neglect case, and Judge Grosshans incorporated that order in the protection order case and incorporated that order in this case. The parents are immature and one parent may be psychologically troubled. Unfortunately the Department's recommendations do not appear in the record. Two trial judges, however, reviewed the Department's recommendations and concluded that in this case, Candace Johnson was necessary for Elissa.

No error or abuse of discretion appear. We affirm on this issue.

**ISSUE VI: WHETHER FATHER IS ENTITLED TO ATTORNEY FEES FOR THE APPEAL.**

Father has filed a motion for appellant's attorney fees which is supported by a verified, itemized statement of the legal services rendered as required by *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). SDCL 15–17–38 provides that attorney fees may be granted in cases of domestic relations and support. Proceedings which are sufficiently intertwined with the domestic relation case do not prohibit such an award being made. *See Estate of Thomas v. Sheffield,* 511 N.W.2d 841, 844 (S.D.1994); *Finck v. Finck,* 354 N.W.2d 198, 202 (S.D.1984). Attorney fees on appeal may be granted, "regardless of the success of the party requesting them, unless that party has proceeded in bad faith, or has brought a frivolous or unjustified action." *Peterson v. Peterson,* 434 N.W.2d 732, 738 (S.D.1989).

In determining whether fees for the appeal are proper, we must "consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case." *Hautala v. Hautala,* 417 N.W.2d 879, 883 (S.D.1988); *Peterson,* 434 N.W.2d at 738.

In this case, no evidence regarding the property the parties owned and the liquidity of assets was entered. Regarding incomes, evidence demonstrated that Father earns $7.97 per hour plus approximately $207 per month in overtime. Mother earns $4.50 per hour, almost half of what Father earns. Finally, neither party spent an unreasonable amount of time on the appeal, an appeal which we feel was not filed in bad faith.

On the basis of the facts in this case, we are of the opinion that attorney fees are not warranted. Consequently, Father's motion is denied.

We modify the judgment as previously stated and affirm.

MILLER, C.J., and SABERS, J., concur.

WUEST and AMUNDSON, JJ., concur in part and dissent in part.

SRSTKA, Circuit Judge, for HENDERSON, Retired Justice, who was a member of the Court at the time this action was submitted and who had disqualified himself from participating therein.

KONENKAMP, J., who was not a member of the Court at the time this action was submitted, did not participate.

WUEST, Justice (concurring in part and dissenting in part).

This was a paternity proceeding which the circuit court turned into a "divorce proceeding." His pragmatic solution to the unmarried live-ins' legal affairs is ingenious. My problem with the circuit court's decision and the majority's opinion is a lack of statutory authority. Because of the increasing number of live-ins accumulating joint property and children, perhaps the legislature should address the situation and provide some type of "no-marriage divorce" * laws.

The majority opinion correctly states the law regarding the income tax exemption, but then affirms the trial court's decision. In my opinion, we should leave the income tax exemption issue to the federal authorities. We are approving an exemption which we are not empowered to decide. Perhaps, we will be overruled by the Internal Revenue Service. I don't relish being in that position nor is it fair to the parties as it tends to mislead them as to the income tax exemption. Otherwise, I concur with the majority.

AMUNDSON, Justice (concurring in part and dissenting in part).

The established precedent in this jurisdiction has long been that attorney fees are not awarded as costs unless specifically authorized by statute. *See O'Connor v. King,* 479 N.W.2d 162 (S.D.1991).

SDCL 15–17–38 does not provide for the piggybacking of attorney fees incurred in a mental commit action onto the costs awarded in a paternity action. Further, there cannot be adequate appellate review of an issue when this court is required to assume the trial court either reviewed or considered the attorney fees as a debt. Awarding of attor-

---

* My slang for lack of a better description.

ney fees in this case could certainly lead to the opening of the flood gates for ingenious claims for attorney fees in future litigation. Therefore, I would reverse this award of attorney fees.

I agree with Justice Wuest's special writing on the income tax exemption and concur in the balance of the majority writing.