Wife appeals from a divorce decree entered on April 10, 1989 by the Circuit Court of Houston County.
The parties were first married in August 1975 and were divorced in June 1983. Two children were born of the union. The June 1983 divorce decree incorporated a stipulation and voluntary agreement of the parties respecting child custody, support, visitation, and a property settlement.
The parties remained divorced but continued to see and date one another until February *Page 1344 
1984, when they attempted a reconciliation. After a trip to Texas for a week, described by the wife as "a honeymoon," the parties resumed living together. In 1986 the trailer in which the parties were living burned and most, if not all, of their familial possessions were destroyed. As a result, the parties moved into the husband's mother's home, where they lived for approximately fifteen months.
Subsequently, the parties began planning to build a new home on property owned by the husband's mother. To this end the parties and the husband's mother executed a mortgage on the husband's mother's property to obtain financing to build the home. Both husband and wife assisted in the construction of the new home.
In June 1988 the wife left the husband because of a fight that occurred between them. The husband had physically abused his wife and subsequently pleaded guilty to a charge of harassment stemming from this incident. In November 1988 the wife filed for divorce.
After ore tenus proceedings the trial court, apparently deciding that the parties had entered into a common law marriage relationship, divorced the parties. Pursuant to the divorce decree, among other things, the wife was awarded custody of the children, subject to the husband's reasonable visitation rights, and the husband was ordered to pay $225 per month per child as child support.
The wife first argues that the trial court abused its discretion when it failed to award her the marital home, or an interest in the marital home, or by not creating a constructive trust on the home for the benefit of the wife.
In our review of a judgment based upon ore tenus evidence, we presume the trial court's judgment is correct, and we will not set it aside on appeal unless it is so contrary to the evidence as to be plainly and palpably wrong or unjust. Flowers v.Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985).
The proportion or share of property given to each spouse does not have to be equal, but it must be equitable in light of the circumstances of each case. Fuller v. Fuller, 418 So.2d 121
(Ala.Civ.App. 1981), writ quashed, 418 So.2d 125 (Ala. 1982).
The record establishes that the home built by the parties was procured only because the husband's mother obtained a mortgage upon her own property. The wife testified that the husband's mother agreed to deed one acre of land to the parties after their new home was complete. The wife, however, admitted that no deed was ever delivered from the husband's mother to either the husband or wife. The husband testified that his mother's signature was necessary to obtain the construction financing because his income was too low to obtain any financing. He stated that he makes two annual payments on the home to his mother; and, further, neither he nor his wife contributed any money towards the cost of building the home.
At the time the home construction was complete and the parties moved into the home in October 1987, the outstanding indebtedness amounted to $30,000. The wife and husband separated in June 1988.
Considering the relatively short period of time the home was used as the marital residence, the significant outstanding mortgage, and the relatively modest income of the parties, we cannot say that the trial court committed a plain and palpable abuse of discretion. To substitute our judgment for that of the trial court would be to reweigh the evidence. This the law does not allow. See, Flowers, 479 So.2d 1257.
In addition, we note that the wife testified that the husband's mother never gave either of the parties a deed to the property upon which the parties' home was constructed. Generally, a deed is ineffective to convey any interest in real property until it is delivered to the grantee. See, Duncan v.Johnson, 338 So.2d 1243 (Ala. 1976).
The wife next asserts that the trial court erred in awarding $450 per month as child support and failing to award her any alimony. *Page 1345 
An award of child support is dependent upon the needs of the child or children and the ability of the parent to pay.Spears v. Spears, 382 So.2d 572 (Ala.Civ.App. 1980).
Also, though there are no fixed standards upon which to determine a grant or denial of periodic alimony, there are many appropriate factors to consider. Included among them are: the financial circumstances of the parties, their future prospects, age, health, station in life, length of the marriage, and the conduct of each with reference to the cause of divorce.Edwards v. Edwards, 410 So.2d 91 (Ala.Civ.App. 1982).
The record establishes that the husband farms land owned by his mother and raises certain livestock. Since 1985 his tax returns reflect yearly income levels varying from approximately $6,000 up to $14,500. Each year the husband borrows substantial amounts of money to conduct the farming operation, and he repays these production loans as the crop is harvested. He pays rent to his mother which is approximately one-half of the amount charged for comparable land. The record shows that he has engaged in other work at various times and is in apparent good health.
The record shows that the wife has been employed since the parties' separation and earns approximately $950 per month. She testified that she and the children were living rent-free but would be forced to move in the near future.
The wife is in apparent good health and approximately thirty-two years of age. There is testimony showing that both parties were responsible for the breakup of their marriage.
We conclude that the trial court did not abuse its discretion in the award of child support and its denial of an award of periodic alimony.
The last issue raised by the wife is whether the trial court abused its discretion by awarding the husband the federal income tax dependency exemption (26 U.S.C. § 152(e)) for the parties' children.
Prior to the 1984 amendments to 26 U.S.C. § 152(e) (1988), the decision over which parent, custodial or noncustodial, was allowed to receive the dependency exemption from federal income tax computation was left to the sound discretion of the trial court in Alabama. See, Grider v. Grider, 376 So.2d 1103
(Ala.Civ.App. 1979). Under the amended version of 26 U.S.C. § 152(e), the custodial parent is legally entitled to the dependency exemption for federal income tax purposes. (Alabama income tax laws have a similar provision, but the determination over which parent is entitled to the exemption is not related to whether he or she is the custodial parent.)
The "exceptions" to this general rule are enumerated in § 152(e)(2), (3), and (4). Our review is limited only to the interplay between § 152(e)(1)'s general rule and § 152(e)(2), which allows a custodial parent to release his or her right to claim an exemption for his or her children. Pursuant to § 152(e)(2), in order for the noncustodial parent to be allowed to use the dependency exemption, the custodial parent must execute a written, signed release agreeing to it. The precise issue before this court is whether amended § 152(e) operates to deprive our state courts of the power to allocate the dependency exemption, for federal income tax computations, to the noncustodial parent by requiring the custodial parent to execute a valid § 152(e)(2) release.
State courts are split regarding this issue. Those that allow the trial court, in the exercise of its discretion, to allocate the exemption reason that there is no explicit or implicit showing that the United States Congress intended to "preempt" state law (see, Serrano v. Serrano, 213 Conn. 1, 566 A.2d 413
(1989)), or that a trial court can use its contempt powers to coerce the custodial parent to execute a valid § 152(e)(2) release. See, e.g., Gwodz v. Gwodz, 234 N.J. Super. 56,560 A.2d 85 (1989); Hughes v. Hughes, 35 Ohio St.3d 165,518 N.E.2d 1213, cert. denied, ___ U.S. ___, 109 S.Ct. 124, 102 L.Ed.2d 97
(1988).
Jurisdictions that do not allow such allocation reason that the legislative intent, *Page 1346 
with respect to § 152(e)(2) releases, shows that the release by the custodial parent should be voluntary, as opposed to being the result of a threatened contempt citation. See, Brandriet v.Larsen, 442 N.W.2d 455 (S.D. 1989); McKenzie v. Kinzey,532 So.2d 98 (Fla.Dist.Ct.App. 1988). However, even under the latter interpretation, the trial court is obligated to take the statutory allocation into account when determining the support obligation of the noncustodial parent. See, Brandriet. The difference between the interpretations, therefore, might be inconsequential as a practical matter.
 "In the [jurisdictions allowing an allocation], the receipt of child support is contingent upon the custodial parent going along with the allocation involuntarily, while in the [jurisdictions not allowing an allocation] the trial court may take the custodial parent's refusal to voluntarily waive the exemption into consideration and set the child support at a level low enough to induce the custodial parent to [voluntarily release]."
Brandriet, 442 N.W.2d 455, 459.
A reading of the legislative history of the amendments to § 152(e), in sum, reveals that Congress's purpose was to prevent the Internal Revenue Service from becoming engaged in litigation between parents who both claim the dependency exemption, and to allow the issue of which parent is to receive the dependency exemption to be resolved without the involvement of the IRS. See, Legislative History, Deficit Reduction Act of June 27, 1984 (Publ.L. No. 98-369, 98 Stat. 494), reprinted 1984 U.S. Code Cong. Ad. News 697, 1140. The provisions of § 152(e) are silent on the issue of whether a state court has the authority to allocate the dependency exemption. The 1984 amendments to § 152(e) function only to provide "certainty," and to relieve the IRS of the burden of engaging in disputes between divorced parents. Id.
In Cross v. Cross, 363 S.E.2d 449 (W.Va. 1987), the Supreme Court of West Virginia considered this issue and determined that the trial court had the discretionary authority to award the dependency exemption to the noncustodial parent by ordering the custodial parent to execute the § 152(e)(2) release. TheCross court points to a valuable, but apparently unintended, benefit to the custodial parent: when the release is to be made annually, the custodial parent is given some leverage to require the payment of past-due installments of child support. Also, the "value" of the exemption increases as a parent's income rises and places him or her in a higher federal income tax bracket. Therefore, it would be reasonable to allow the allocation of the exemption to the parent in the higher tax bracket, and "then [adjust] the value of the cash child support payments to offset the value of the exemption." Cross,363 S.E.2d 449, 460.
After a careful consideration of the cases that have confronted the issue now before us, we believe the better reasoned decisions support our conclusion that the state trial court should have the discretion to allocate the dependency exemption and, if necessary to the enforcement of the allocation, to require the custodial parent to execute a valid § 152(e)(2) release. We find no error in this issue.
Each party's request for attorney's fees on appeal is denied.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 1347