PITTMAN, Judge.
This appeal concerns custody and child-support issues arising from the dissolution of a common-law marriage.
The proceedings giving rise to this appeal began in December 2001, when Roy Dean Hunt (“the father”) filed a complaint for a divorce in which he alleged that he and Melissa Ann Garcia (“the mother”) had entered into a common-law marriage resulting in the birth of one child. The father requested that the trial court award him custody of the parties’ minor child and direct the mother to pay child support.[1] In May 2002, the trial court entered a divorce judgment awarding the mother primary custody and awarding the father liberal visitation; the father was directed to pay $616 per month in child support.[2]
On June 14, 2002, the father filed a motion for a new trial challenging, among other things, the trial court’s custody and support awards. The father alleged in that motion that he had been directed by a Florida court to pay $1,500 per month as a child-support obligation with respect to two of his children from a previous marriage, and he contended that the trial court had erred in failing to consider that preexisting child-support obligation in computing the child support he owed to the mother. The father’s postjudgment motion was denied on June 18, 2002, and he appealed to this court.
On appeal, the father first contends that the trial court erred in awarding the mother primary physical custody of the parties’ child. Specifically, the father argues that the mother exhibited a “lack of parenting ability” by failing to timely immunize the child; he further argues that he could provide the best environment for the child.
Alabama law affords priority to neither parent in an initial judicial custody determination. Williams v. Williams, 602 So.2d 425 (Ala.Civ.App.1992). The controlling consideration in such cases is the best interest of the child. Id. Our standard of review is limited when a trial court *1205 enters a custody judgment based on evidence presented ore tenus; we presume that the trial court’s custody judgment based on that court’s findings of fact is correct, and we will reverse it only if it is plainly and palpably wrong. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990).
The mother testified that she and the father had worked together at a Pizza Hut restaurant and that they had moved in together following an automobile collision in 1998 that caused two of the mother’s older children (i.e., children not born of the parties’ common-law marriage) to be hospitalized; the expenses of her children’s hospitalization prevented the mother from making her rental payments with respect to her residence. The mother stated that, after six to eight months of cohabitation, she and the father had become “committed” to each other. The parties’ daughter was born in February 2000. The parties separated in 2001.
The mother testified that she wanted the father to continue to see their child, noting that the father had provided overnight care for the child on several occasions during the parties’ separation; she had allowed the overnight visits until the father telephoned her to tell her that he would not return the child to her. However, the mother also testified that the father had engaged in harassing conduct toward her and that, because of the father’s harassment, she had felt compelled to telephone police officers on one occasion. The mother testified that the father’s harassing behavior included driving a motor vehicle during early morning hours without its headlights on down the street where she was living. The mother added that the father tended to visit her unannounced, that he was at her house “all the time,” and that she would prefer that he telephone her before visiting.
The mother admitted that neither she nor the father had taken the child to receive the immunization injections she should have received at the age of 6 months and that those injections were not administered until the father took the child to the doctor when the child was 20 months old. A representative of the Department of Human Resources (“DHR”) conducted a home study as to 'both parties; that representative testified that both homes were approved and that she saw no reason to remove the child from the mother’s care. The DHR representative did express concern about what she termed the father’s “obsessive” nature, and she stated that she could find nothing to substantiate certain allegations the father had made against the mother in correspondence with DHR, such as his claim that the child had been sleeping on the floor of the mother’s home. Rather, the DHR representative stated that the child had been sleeping on a “pallet” and that the mother’s home was “very nice.” .
The father testified that he would like to reconcile with the mother. He described himself as having acted as a “dad” to the mother’s two older children and stated that he “got a little teed off’ when he found out he was not invited to a birthday party for one of those children. The father also stated that he had become upset when he saw a list of “emergency” telephone numbers posted on the mother’s refrigerator that did not include his name or number. He was further upset because he did not personally know one of the persons listed as an emergency contact.
The father admitted that on one particular Christmas Eve, he picked up the parties’ child and took her to Florida to visit his two children from a previous marriage. He admitted that the only notice he had given the mother of his intentions was a casual reference in a conversation two *1206 weeks beforehand that he wanted to go to Florida on Christmas Eve. The father asserted that it would be in the child’s best interest for him to have primary custody because his highest priority is his family. The father’s former wife (i.e., his wife before his common-law marriage to the mother) testified that the father had been very loving and attentive to the child and that he had been very supportive of their two children.
In this case, the trial court saw and heard the parties and several other witnesses testify, and it decided to award primary custody of the child to the mother. Although neither parent is perfect, the record indicates that both parties are caring and loving parents who are committed to their child. Given the strong presumption of correctness afforded a trial court’s determination when it is based on evidence received ore tenus, we cannot say that the trial court’s decision to award primary custody of the child to the mother is plainly and palpably wrong.
Next, the father argues that the trial court erred in failing to allow a certain witness to testify regarding her observations of the mother’s parenting ability with respect to the mother’s older children. The following pertinent exchange occurred during the trial:
“[Counsel for the father]: And during the time that [the mother] lived there at the trailer park, did you have an opportunity to observe her two children?
“THE COURT: Hold on. This is before a relationship with [the father]?
“[Counsel for the father]: Yes, sir, it is.
“THE COURT: I’m not going to allow this.
[[Image here]]
“[Counsel for the father]: — I think it goes to [the mother’s] parenting ability.
“THE COURT: It has no relevance to a child that wasn’t born. I’m not going to allow it.”
We note that the “trial court has wide discretion to determine whether evidence is relevant, material, or remote and has wide discretion to exclude or to admit evidence.” Gober v. Khalaf, 628 So.2d 416, 417 (Ala.1993). A trial court’s ruling regarding the admissibility of evidence will not be reversed absent a clear abuse of the court’s discretion. T.G.S. v. D.L.S., 608 So.2d 743 (Ala.Civ.App.1992). It appears that the trial court determined that any testimony regarding conduct that occurred before the parties met and before the child in question was bom was remote and immaterial and that the primary issue was the parties’ current abilities to care for the child. Our review of the record fails to disclose any abuse of the trial court’s discretion in excluding this testimony.
The father also contends that the trial court erred in calculating his child-support obligation; he claims that the trial court failed to comply with Rule 32(B)(6), Ala. R. Jud. Admin., by failing to deduct his preexisting child-support obligation from his gross income when calculating the child support to be paid to the mother.
The record reflects that during the trial, the father testified that he paid $1,500 in child support to his former wife and that he would provide the court with a copy of that divorce judgment. The father’s former wife testified that the father had been ordered to pay $1,500 in “support,” but that that amount had been reduced to $1,200 a month. When questioned directly by the court regarding the father’s preexisting child-support obligation, the father’s former wife stated that the court had awarded $900 in child support and that the remainder (i.e., $600) was for spousal support; she also stated that she and the *1207 father had agreed to reduce the figure from the court-ordered $1,500 to $1,200.
Although the father and his former wife testified as to the father’s preexisting child-support obligation and although the trial court indicated at trial that the father’s preexisting child-support obligation was “part of the equation” used to determine his gross income for purposes of calculating his child-support obligation in this action, the Child Support Guidelines form (Form CS^42) filed in the record contains no entry in the blank provided to indicate the father’s preexisting child-support obligation, and the trial court’s $616 child-support award is based upon the father’s reported monthly gross income of $8,425, without any adjustments for preexisting child support. Moreover, the trial court denied the father’s postjudgment motion even though the father attached to that motion a copy of the Florida divorce judgment that directs the father to pay $900 per month in child support.
Rule 32(B)(6), Ala. R. Jud. Admin., states: “The amount of child support actually being paid by a parent pursuant to an order for support of other children shall be deducted from that parent’s ‘gross income.’ ” The rule allows a deduction from a parent’s gross income for a preexisting court-ordered support obligation. The rule also affords a deduction from a party’s gross income in cases where support is being provided other than pursuant to a court order; Rule 32(B)(6) further states: “If a parent is legally responsible for and is actually providing support for other children, but not pursuant to an order of support, a deduction for an ‘imputed preexisting child support obligation’ may be made from that parent’s gross income.”
In this case, the testimony indicated that the father was paying $900 per month in child support to the mother of his two children from a previous marriage, pursuant to a Florida judgment of divorce. That judgment specifying the father’s legal obligation of support for those children, which corroborated the testimony concerning the father’s preexisting child-support obligations, was provided to the trial court with the father’s postjudgment motion. We conclude that the trial court, in its computation of the father’s child-support obligation, should have allowed a deduction for the father’s preexisting child-support obligation and that that court erred in failing to do so.
The trial court’s judgment is reversed as to the issue of child support, and the cause is remanded for the trial court to recalculate the father’s child-support obligation after allowing a deduction from the father’s income based upon the father’s preexisting child-support obligation. As to all other issues presented, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ„ concur.

. We note that the mother was not represented by counsel at trial or on appeal.

. Although the trial court's judgment provides that the “defendant'' (i.e., the mother) shall pay child support, that reference appears to be a clerical error; the judgment is more properly read, in its entirety, as requiring the "plaintiff” (i.e., the father, who is not the primary custodial parent) to pay child support.