Judy Knowles Faust ("the mother") and Bryan W. Knowles ("the father") were divorced on May 23, 2000. Pursuant to an agreement of the parties, the divorce judgment provided that the parties would have joint legal and physical custody of the parties' two children, a son who was 13 years old and a daughter who was 10 years old at the time the trial of this action began in February 2004.
The agreement provided that the children were to reside with the father during the first and third weeks of each month and with the mother during the second and fourth weeks of each month. Neither party was to pay child support to the other; instead, each parent was to pay for half of the children's expenses. The divorce judgment also provided that each party would pay half of the outstanding balance owed on their MasterCard credit-card account as of April 20, 2000, and that any charges made after that date would be the sole responsibility of the party making the charge.
On September 25, 2002, the mother filed a petition to modify the divorce judgment, seeking sole physical custody of the children and child support from the father and requesting that the father be granted supervised visitation with the children. The mother also sought to have the father held in contempt for his failure to pay his share of the children's expenses, for his failure to return certain personal property to her, and for his failure to repay her certain loans that, she alleged, she had made to him. The father answered and counterclaimed, seeking sole physical custody of the children and child support from the mother. On June 17, 2003, the mother amended her petition, seeking to have the father held in contempt for his failure to refinance the loan and mortgage encumbering the former marital residence.
The trial began on February 10, 2004, but it was not concluded on that date and was continued to another date. On March 17, 2004, the mother amended her petition a second time, seeking a judgment for unauthorized cash advances totaling $11,020.00 that, she claimed, the father had incurred by using an equity-line credit card after the date of the divorce. The father filed an answer and a motion to dismiss the second amended petition. On August 26, 2004, the father moved to dismiss the mother's claims seeking payment *Page 382 
for loans and debts allegedly owed by the father, asserting that those claims were barred by the applicable statute of limitations.
The trial resumed and was concluded on August 27, 2004. On October 28, 2004, the trial court entered a judgment denying both parties' petitions for a modification of custody. The court entered a judgment in favor of the mother in the amount of $2,250.85 and ordered the mother to pay the father $321.80 per month in child support. The mother appeals.
 I.
The mother contends that the trial court used the wrong standard in determining whether it should modify the child-custody provision of the divorce judgment. The trial court's judgment states, in pertinent part:
 "The trial in this case generated considerably more heat than light onto issues plead [ed] by the parties. Suffice it to say that neither party has demonstrated that the other is unfit to be custodian for the minor children. As a result of the lack of evidence justifying a modification of the [divorce judgment] with regard to the initial order concerning custody, the court declines to modify the custody provisions. . . ."
(Emphasis added.) The trial court apparently determined that neither parent was entitled to sole physical custody of the children because neither parent had proven that the other was unfit. Cf. Ex parte Terry, 494 So.2d 628 (Ala. 1986) (holding that in a custody dispute between a parent and a nonparent the parent is entitled to custody unless he or she is shown to be unfit). Because the divorce judgment gave the parties joint physical custody, however, this case is governed by Ex parte Couch, 521 So.2d 987 (Ala. 1988), which held that the best-interest standard applies to the modification of an existing joint-custody arrangement. SeeNave v. Nave, 942 So.2d 372 (Ala.Civ.App. 2005).
When a trial court concludes that the moving party in a custody-modification case has not met his or her burden of proof, but the court has imposed upon that party an erroneously heavy burden, then this court has no authority to review the evidence to determine whether, using the correct burden of proof, the trial court's judgment can be upheld. See Exparte Perkins, 646 So.2d 46 (Ala. 1994). Here, as inPerkins, we must reverse that portion of the judgment dealing with child-custody modification and remand the cause with instructions that the trial court reconsider the evidence in light of the correct "best interest" standard and determine whether a custody modification is warranted.
 II.
The mother argues that the trial court erred in ordering her to pay child support; in the alternative, she claims that the trial court miscalculated the amount of child support she is obligated to pay. Because of our disposition of the custody-modification issue, we pretermit any discussion of child support at this time.
 III.
The mother insists that the trial court erred by failing to find the father in contempt for not paying half of the children's expenses, as the divorce judgment called for. The mother presented evidence indicating that she had paid $6,363.25 for school lunches, medical expenses, Scholar's Bowl costs, and miscellaneous other expenses related to the children; that she had asked the father to reimburse her for half of those expenses; and that the father had refused to pay her. The father testified (and the mother acknowledged) that, when the children were in his custody, he *Page 383 
had always paid all the children's expenses and had never sought any reimbursement from the mother. Under the circumstances, the father said that he did not believe he owed the mother any reimbursement for expenses she had incurred when the children were with her.
The trial court made no express finding with respect to the mother's claim that the father should be held in contempt and required to reimburse her. However, by concluding that "[a]U relief not expressly granted herein is deemed denied," the trial court denied the mother's claim. The trial court must have believed the father's testimony that, without asking for reimbursement, he had paid sums equivalent to those the mother claimed to have spent on the children. See Ex parteFarm, 810 So.2d 631, 633 (Ala. 2001) ("`It is . . . well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.' Ex parteBryowsky, 676 So.2d 1322, 1324 (Ala. 1996).").
The mother also contends that the court erred by failing to find the father in contempt for his nonpayment of postdivorce credit-card debts and loans she made to him. The divorce judgment provided that each party would pay half of the outstanding balance owed on their MasterCard credit-card account as of April 20, 2000, and that any charges made after that date would be the sole responsibility of the party making the charge. The father testified that for approximately 18 months after the divorce the parties attempted to reconcile, lived together as husband and wife, shared expenses, and took family vacations together. He said that most of the credit-card charges about which the mother complained were either the mother's gifts to him or were family expenses incurred during the period that, he said, the parties were sharing expenses. The father requested that the trial court allow him a setoff for half of what he spent while the parties were residing together and sharing expenses.
The mother denied that the parties had continued to live together as husband and wife after the divorce, although she did acknowledge that she had permitted the father to "tag along" on her vacations with the children. The mother testified that she had allowed the father to use the credit card and that the father had promised to repay what he charged, but he never did. The mother also testified that she had made loans to the father totaling $1,400. The mother's brother supported the father's version of the events, testifying that every time he visited the former marital home (which had been awarded to the mother in the divorce judgment) during the 18-month period at issue, the father was present.
On this issue, the trial court made the following findings:
 "[W]hile there were a number of allegations and assertions made during the course of the trial as to whether or not the parties continued a relationship after the date of the divorce, there is a substantial body of evidence to indicate that while [the parties'] relationship might not have been continuous and under the same roof, that they intermingled their finances to the point that neither is able to give a convincing rendition of the contributions and obligations of the various parties during the Summer and Fall of 2000. It is obvious that the [mother] was in a better financial condition and was very generous in her treatment of the [father], given the fact that they were divorced at the time
 ". . . . *Page 384 
 "With regard to the amount claimed by the [mother] against [the father], the court enters judgment in favor of the [mother] and against the [father] in the amount of $2,250.85. Although the [mother] claims to have `loaned' the [father] $1,400 more or less, there were no notations on the checks upon which she relies indicating the purpose of the check[s]."
"Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court.Curtis White Construction Co. v. Butts BillingsleyConstruction Co., 473 So.2d 1040 (Ala. 1985)." Exparte Perkins, 646 So.2d 46, 47 (Ala. 1994).
 "`[O]ur standard of review is very limited in cases where the evidence is presented ore tenus. A . . . determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440
(Ala.Civ.App. 1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App. 1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985).'
"Phillips v. Phillips, 622 So.2d [410] at 412
[(Ala.Civ.App. 1993)].
"Only where the findings are not supported by the evidence and are clearly erroneous should an appellate court decide that the facts are not as the trial court found them to be. [Exparte] Jones, 620 So.2d [4] at 7 [(Ala. 1992)];Curtis White, 473 So.2d at 1041." Ex partePerkins, 646 So.2d at 47. We conclude that the trial court's $2,250.85 judgment in favor of the mother is supported by the evidence and due to be affirmed.
 Conclusion
That portion of the trial court's order entering a judgment in favor of the mother in the amount of $2,250.85 and denying other monetary relief sought by the mother is affirmed. That part of the trial court's judgment declining to modify custody is reversed, and the cause is remanded with directions to reconsider the evidence in light of the "best interest" standard and to determine whether a modification of custody is warranted.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.